IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| BEVERLY WRIGHT, as a wrongful death beneficiary; ISABEL OLIVO SALINAS, as Next Friend of X.J.W., a minor child, as wrongful death beneficiary and Heir to the Estate of JOSHUA WRIGHT, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 1:23-cv-864 |
| v. | § § | |
| ISAIAH GARCIA, in his individual capacity, | § § § | |
| Defendants. | § § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs bring this 42 U.S.C. § 1983 case against Defendant Isaiah Garcia, former Hays County Jailer, for the excessive, unnecessary and ultimately lethal force he inflicted on Joshua Wright.

### I.    PARTIES

1.    Plaintiff Beverly Wright is the natural parent of Joshua Wright, deceased. She is a resident of Hays County, Texas and sues in her capacity as a statutory beneficiary under the Texas Wrongful Death Act.

2.    Joshua Wright died without a surviving spouse, and having fathered only one child, X.J.W.

3.    Plaintiff Isabel Olivo Salinas is the parent and next friend of minor child, X.J.W. Plaintiff Salinas and X.J.W. are residents of Hays County, Texas and sue in X.J.W.'s capacity as a statutory beneficiary under the Texas Wrongful Death Act and the sole statutory heir to

the Estate of Joshua Wright.

4.      Defendant Isaiah Garcia was at all relevant times a county jailer for Hays County and is sued in his individual capacity for compensatory and punitive damages. At all relevant times, Garcia was acting under color of law as a Hays County jailer. Garcia may be served with process wherever he may be found. His forwarding address is likely known to the Hays County Sheriff's Office, located at 810 S. Stagecoach Trail, San Marcos, Texas 78666.

## II.      JURISDICTION AND VENUE

5.      As this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6.      This Court has specific *in personam* jurisdiction over Defendant Garcia because this case arises out of conduct which occurred in Hays County, Texas, which is within the Western District of Texas.

7.      Venue of this case is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Hays County, which is within the Western District of Texas.

## III.      FACTS

8.      On information and belief, on December 11, 2022, Joshua Wright was experiencing a mental health crisis and possible medical emergency at the Hays County Jail.

9.      Shortly after 3 a.m. on December 12, 2022, Hays County jailers took Wright to the emergency room of Ascension Seton Hays, in Kyle, Texas.

10.      In the E.R., Wright reported severe chest pain and confirmed that he was taking Wellbutrin, his psychiatric medication.

11.      While medical staff in the E.R. were evaluating Wright, shift change occurred for

the two Hays County jailers who accompanied Wright to the hospital. Defendant Garcia and a second jailer arrived to the E.R. to relieve the original two nightshift jailers.

12. Though Garcia inexplicably did not have his standard-issued TASER on him, one of the departing officers provided Garcia with a TASER.

13. Garcia was thus armed with a TASER and a Hays County issued firearm.

14. Shortly before the hospital was set to discharge him, around 11 A.M., Wright asked to use the restroom.

15. Garcia escorted Mr. Wright to a restroom and unlocked Wright's handcuffs. Garcia left Wright's leg irons in place.

16. When Wright exited the restroom, he pushed past Garcia. and moved down a hall away from Garcia.

17. In response, Garcia drew his service weapon and followed Wright.

18. Because Wright's leg irons significantly limited his stride, as did a vitals cart that was in his path, Garcia quickly gained ground on Wright.

19. Rather than continue closing in on the unarmed and defenseless Wright, and personally restraining him or even deploying his TASER, Garcia fired his gun at Mr. Wright.

20. On information and belief, this bullet tore through Wright's left arm but would not have been fatal.

21. On information and belief, Wright, now wounded and in fear for his life, took several more steps away from Garcia.

22. His pace, however, was effected by the bullet wound and remained hampered by his leg irons.

23. In fact, after Garcia's first shot, Wright collided with the medical cart and fell to

his knees.

24.     Though Garcia closed in on Wright when he went to the ground, Garcia did not draw his TASER or make any attempt to physically restrain the wounded Wright.

25.     Garcia was close enough to Mr. Wright for a TASER to be effective, and given Wright's condition, close enough to subdue him physically before Wright could have possibly exited the hospital.

26.     Instead of using non-lethal options to restrain Wright, Garcia employed deadly force again.

27.     Three seconds after his first shot hit Wright, Garcia fired again at Wright as Wright struggled to his feet.

28.     On information and belief, this bullet ripped through Wright's right upper arm, breaking his arm in multiple places, before shallowly passing through Wright's chest. This shot downed Wright, further slowing and essentially incapacitating him.

29.     After Garcia's second bullet downed Mr. Wright, he closed in further on Wright, putting Wright well within the effective distance of Garcia's TASER and where he could have run to quickly to grab the injured Wright.

30.     Instead of physically restraining Wright or using his TASER, Garcia intentionally fired at the defenseless, unarmed and injured Wright a third time.

31.     On information and belief, this bullet struck Mr. Wright in the chest, breaking two of his ribs.

32.     Though this bullet caused Mr. Wright significant injuries, it also would not have been fatal had Garcia stopped firing.

33.     Badly injured and essentially incapacitated from the three shots fired by Garcia,

Wright struggled to keep moving.

34.     Wright stood with his back to Garcia.

35.     Wright was not in any position to escape from the hospital as he was in a hospital hallway with no exit in his immediate vicinity to use.

36.     In fact, Garcia could have easily caught up to him and restrained him.

37.     Wright posed no danger to Garcia or anyone else.

38.     Wright never reached for, threatened or moved towards any specific person.

39.     Throughout the entire incident, Wright did not threaten anyone, have anything in his hands, or even appear to have anything in his hands.

40.     There was simply no need for deadly force to stop Wright from moving away from Garcia or for any other reason.

41.     Yet, rather than physically restraining the bleeding, downed, and unsteady Wright (as he could have done) or use his TASER to do so (as he also could have done), Garcia fired his gun twice in quick succession into Wright's back.

42.     On information and belief, these shots, the fourth and fifth fired by Garcia, penetrated Wright's lung and fractured his thoracic and cervical vertebrae in at least four places. They caused Wright to suffer agonizing pain and were not survivable.

43.     Wright was pronounced dead at 12 p.m., December 12, 2022 after suffering significant blood loss and senseless and terrible pain.

## IV.     CAUSE OF ACTION

44.     Plaintiffs incorporate by reference the foregoing paragraphs and further allege as follows:

45.     Defendant Garcia, while acting under color of law, brutally gunned down Wright

despite the ready availability of effective non-lethal options to stop Wright. His use of deadly force was not necessary to prevent Wright from escaping from custody and was patently unreasonable.

46.    The deadly force used by Defendant Garcia was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly and proximately caused Wright's death. Therefore, Defendant Garcia's actions violated Wright's clearly established Fourteenth Amendment right to be free from excessive force.

47.    As a direct and proximate result of Garcia's actions, Wright suffered a painful death.

48.    Defendant Garcia was acting under color of law at all relevant times.

## V.    DAMAGES

49.    Plaintiffs incorporate the foregoing going paragraphs for all purposes as if fully stated herein.

50.    Plaintiff Beverly Wright, in her capacity as wrongful death beneficiary, asserts claims on her own behalf. Plaintiff Wright seeks damages for the following:

  a.   Expenses for Wright's funeral and burial;

  b.   Past and future mental anguish;

  c.   Past and future loss of companionship and society;

  d.   Pre-judgment and post-judgment interest at the highest rates allowable under the law;

  e.   Punitive damages in the highest amount allowed by law; and

  f.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

51.    Plaintiff Isabel Olivo Salinas, as next friend of X.J.W., asserts claims on X.J.W.'s

behalf as a wrongful death beneficiary. Plaintiff Salinas seeks damages for the following:

    a.   Past and future mental anguish;

    b.   Past and future loss of companionship and society;

    c.   Past and future pecuniary loss, including loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value;

    d.   Pre-judgment and post-judgment interest at the highest rates allowable under the law;

    e.   Punitive damages in the highest amount allowed by law;

    f.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    g.   All other economic damages to which Plaintiff may be entitled.

52.     Plaintiff Salinas, as next friend of X.J.W., also asserts survival claims on X.J.W.'s behalf as the sole statutory heir of the Estate of Joshua Wright. As a result of Defendant's acts and omissions set forth herein, the Estate suffered injuries and damages including without limitation the following:

    a.   Conscious pain and mental anguish;

    b.   Pre-judgment and post-judgment interest at the highest rates allowable under the law;

    c.   Punitive damages in the highest amount allowed by law; and

    d.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## VI.    EXEMPLARY DAMAGES

53.     The conduct of Defendant Garcia justifies an award of punitive and exemplary damages against him. Defendant Garcia's multiple excessive uses of deadly force against Wright without justification or need for such force constitutes shocking, brutal, and egregious

conduct. Defendant Garcia acted with malice and acted intentionally, recklessly, or with callous indifference to Mr. Wright's life and rights under the Constitution. Accordingly, Plaintiffs seek punitive or exemplary damages at the highest rate allowable under the law.

## VII.   JURY DEMAND

54.     Pursuant to Federal Rule of Civil Procedure 48, Plaintiffs request a jury trial.

## VIII.   PRAYER FOR RELIEF

55.     Plaintiffs ask that judgment be awarded against Defendant for:

a.   Compensatory damages;

b.   Punitive damages;

c.   Attorneys' fees, including reasonable and necessary expenses including expert fees, pursuant to 42 U.S.C. § 1988;

d.   Costs of court;

e.   Judgment at the highest rate allowable under the law; and

f.   All other relief to which Plaintiffs are justly entitled.

Respectfully submitted,

**EDWARDS LAW GROUP**
603 W. 17th St.
Austin, Texas 78701
Tel.  512-623-7727
Fax.  512-623-7729

By_____/s/ Jeff Edwards_____
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com
LISA SNEAD
State Bar No. 24062204
lisa@edwards-law.com
PAUL SAMUEL
State Bar No. 24124463
paul@edwards-law.com

REBECCA WEBBER
State Bar No. 24060805
WEBBER LAW
4228 Threadgill Street
Austin, Texas 78723
Tel. 512-537-8833
rebecca@rebweblaw.com

**ATTORNEYS FOR PLAINTIFF**