## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BEVERLY WRIGHT, as a wrongful death beneficiary, AND ISABEL OLIVO SALINAS, as Next Friend of X.J.W., a minor child, as wrongful death beneficiary and Heir to the Estate of JOSHUA WRIGHT,** | § § § § § § § | **CASE NO. 1:23-CV-00864-DAE** |
| *Plaintiffs* | § § | |
| **v.** | § § | |
| **ISAIAH GARCIA, in his individual capacity,** | § § § | |
| *Defendant* | § | |

### ORDER

Before the Court are Defendant Isaiah Garcia's Opposed Motion to Stay Civil Proceedings, filed November 10, 2023 (Dkt. 14); Plaintiffs Beverly Wright and Isabel Olivo Salinas's Response, filed November 22, 2023 (Dkt. 15); and Defendant's Reply, filed November 29, 2023 (Dkt. 16). By Text Order entered November 13, 2023, the District Court referred the motion to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

### I.    Background

Plaintiffs Beverly Wright and Isabel Olivo Salinas, as heirs to the estate of Joshua Wright, bring this excessive lethal force lawsuit under 42 U.S.C. § 1983 against former Hays County, Texas corrections officer Isaiah Garcia. Plaintiffs allege that Wright, an inmate at the Hays County Jail, experienced "a mental health crisis and possible medical emergency" and was taken to a hospital emergency room in the early morning of December 12, 2022. Complaint, Dkt. 1 ¶¶ 8-9. Garcia was one of the corrections offers who guarded Wright at the hospital. *Id.* ¶ 11. Around

11 a.m., Wright told Garcia he needed to use the restroom. Plaintiffs allege that Garcia escorted Wright to the restroom and removed his handcuffs, but not his leg irons. *Id.* ¶ 15. After Wright left the restroom, he "pushed past Garcia[ ] and moved down a hall away from Garcia." *Id.* ¶ 16. Garcia followed and shot Wright five times. *Id.* ¶¶ 19-42. He was pronounced dead at 12 p.m. *Id.* ¶ 43.

On April 6, 2023, a Hays County grand jury indicted Garcia for the offense of deadly conduct – discharge firearm under Texas Penal Code § 22.05, a third-degree felony. Dkt. 15-2 at 2. Garcia moves to stay this case until his criminal case is resolved.

## II.    Legal Standard

District courts have "wide discretion to control the course of litigation," which includes the authority to stay pending matters. *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). There is "no general federal constitutional, statutory, or common law rule" barring simultaneous civil and criminal proceedings, but courts may stay civil proceedings in cases with "special circumstances and the need to avoid substantial and irreparable prejudice." *Bean v. Alcorta*, 220 F. Supp. 3d 772, 775 (W.D. Tex. 2016) (citation omitted). One special circumstance is the need "to preserve a defendant's Fifth Amendment right against self-incrimination and to resolve the conflict he would face between asserting this right and defending the civil action." *Alcala v. Texas Webb County*, 625 F. Supp. 2d 391, 397 (S.D. Tex. 2009).

Courts use these factors to determine whether a stay is warranted:

1. the extent to which the issues in the criminal case overlap with those presented in the civil case;
2. the status of the criminal case, including whether the defendants have been indicted;
3. the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay;
4. the private interests of and burden on the defendants;
5. the interests of the courts; and
6. the public interest.

*U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008).

### III.    Analysis

Garcia argues that each of the six factors weighs in favor of a stay. Plaintiffs respond: "None of the six factors favor a stay, and most weigh heavily against it, so the Court should deny Garcia's motion to stay." Dkt. 15 at 5. The Court addresses each factor.

### A.  Extent of Overlap Between Issues in the Criminal and Civil Cases

Overlap between the issues in criminal and civil cases is generally regarded as the most important factor in analyzing a motion to stay. *Slack v. City of San Antonio*, No. SA-18-CA-1117-FB, 2019 WL 11097069, at *2 (W.D. Tex. May 28, 2019). If there is significant overlap, "self-incrimination is more likely and thus weighs in favor of a stay," but "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Bean*, 220 F. Supp. 3d at 776 (citations omitted).

Garcia is charged with violating Section 22.05(b) of the Texas Penal Code, which provides: "A person commits an offense if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." The indictment charges Garcia with knowingly discharging a firearm "at or in the direction of one or more individuals by shooting at Joshua Wright in a medical facility when patients and staff were present." Dkt. 15-2 at 2.

Garcia argues that the civil and criminal cases involve identical issues because they are based on the same conduct: "It is clear that the criminal prosecution is entirely based on the events giving rise to this civil litigation." Dkt. 16 at 2. Plaintiffs respond that the Hays County grand jury declined to indict Garcia for Wright's killing, and the deadly conduct charge he faces "is fundamentally distinct from this wrongful death case, showing the degree of overlap is limited." Dkt. 15 at 5. Plaintiffs contend that they "allege Garcia used excessive force when he *intentionally* shot at

Wright five times and killed him," while the Texas offense of deadly conduct requires only *reckless* conduct. *Id.* at 6. Plaintiffs argue: "In his criminal case, Garcia is alleged to have committed this offense by placing the various patients, family members, and hospital staff in imminent danger of serious bodily injury when he fired his gun in the crowded emergency room with reckless disregard for these third parties." *Id.* Plaintiffs assert that there is no overlap in the elements of the two cases, and Wright's death is "essentially irrelevant in Garcia's criminal case. . . . In fact, if Garcia had missed every shot and never struck Wright, then Plaintiffs would have no excessive force claim, whereas Garcia's criminal indictment would be identical." *Id.* at 6-7.

Even if the *mens rea* and other elements of the civil and criminal cases are different, the Court finds that the civil and criminal cases against Garcia arise from the same set of operative facts. *Kinnie Ma Individual Ret. Acct. v. Ascendant Cap.*, No. 1:19-cv-01050-RP, 2023 WL 5417142, at *4 (W.D. Tex. Aug. 21, 2023). It is the same conduct, Garcia's shooting of Wright, that forms the basis for both this lawsuit and for the indictment. Because there is significant overlap between the facts and issues here and in Garcia's criminal case, "there is a significant danger of self-incrimination," weighing heavily in favor of staying this case. *Bean*, 220 F. Supp. 3d at 776.

**B. Status of the Criminal Case**

Staying a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct. *Id.* Because Garcia has been indicted for his conduct, the Court finds that the second factor also strongly favors a stay.

**C. Whether Plaintiffs' Private Interests Outweigh the Prejudice Caused by a Delay**

"When evaluating the third factor, courts 'may require a plaintiff to establish more prejudice than simply a delay in its right to expeditiously pursue his claim.'" *DeSilva v. Taylor*, No. 1:21-

cv-00129-RP, 2022 WL 545063, at *3 (W.D. Tex. Feb. 23, 2022) (quoting *Bean*, 220 F. Supp. 3d at 776).

Plaintiffs argue they will be prejudiced by a stay because a delay will cause witness memories to fade and risks evidence being lost. Dkt. 15 at 11. But they identify "no discovery that is available now but would be unavailable later should a stay be granted" and have not "alleged that any witnesses will be unable to testify nor that any particular evidence will degrade if a stay is granted." *DeSilva*, 2022 WL 545063, at *3.

Plaintiffs also contend that, without discovery, they may be unable to identify "other liable parties" before the statute of limitations to join parties under Section 1983 runs in December 2024. Dkt. 15 at 10. Plaintiffs allege no facts in their Complaint related to any other potentially liable parties, and their argument about additional potential defendants is speculative. Plaintiffs have not shown that their private interests are likely to outweigh the prejudice caused by a delay.

### D.  Garcia's Private Interest

Under the fourth factor, the Court considers Garcia's private interest in the stay and any burden caused by denying the stay. A defendant facing simultaneous civil and criminal proceedings may be burdened by the choice between invoking his Fifth Amendment rights and jeopardizing his defense in the civil suit, where an adverse inference may be drawn from the defendant's silence. *Brown v. Kenner Police Dep't*, No. 17-3445, 2017 WL 5157563, at *2 (E.D. La. Nov. 7, 2017). A defendant also has an interest in staying a civil trial to avoid exposing possible criminal defense strategies to the prosecution. *Alcala*, 625 F. Supp. 2d at 397.

The Court finds that, without a stay, Garcia would face a conflict between asserting his Fifth Amendment rights and testifying as a witness here. *See Brown*, 2017 WL 5157563, at *2 ("The police officers involved in Mr. Brown's shooting have an interest in protecting their Fifth

Amendment right against self-incrimination while they are facing possible criminal charges."). The fourth factor supports a stay.

### E.  Court's Interest

The Court's interest favors neither party. "In determining the propriety of a stay, a court can consider its own interests in efficient administration and judicial economy." *Bean*, 220 F. Supp. 3d at 777 (quoting *Gonzalez*, 571 F. Supp. 2d at 765). Granting a stay "serves the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *DeSilva*, 2022 WL 545063, at *4 (citation omitted). And this case has been pending for less than five months, making it unlikely that granting a stay will unduly interfere with the District Court's management of its docket. The fifth factor is neutral.

### F.  Public Interest

Finally, the Court must consider the public interest in determining whether to grant a stay. Criminal prosecutions often take priority over civil actions due to the significant public interest in law enforcement. *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017). Although "the public certainly has an interest in the prompt resolution of the instant civil case, it also has an interest in protecting the constitutional rights of criminal defendants." *Meyers v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 WL 393552, at *7 (W.D. Tex. Feb. 1, 2016). Because denying the stay risks violating Garcia's constitutional rights, this factor supports a stay. *Id.*

### G.  Conclusion

The Court finds that five of the six factors weigh in favor of a stay, and the remaining factor is neutral. Because the balance of the factors favors a stay, the Court finds that Garcia's Motion to Stay Civil Proceedings should be granted.

## IV.   Order

For these reasons, this Magistrate Judge **GRANTS** Defendant Isaiah Garcia's Opposed Motion to Stay Civil Proceedings (Dkt. 14). The Court temporarily **STAYS** all civil proceedings until Defendant Isaiah Garcia's criminal proceedings are completed and the parties notify the Court.

If a civil suit is stayed "during the pendency of a criminal proceeding, an administrative closure is appropriate." *Meyers*, 2016 WL 393552, at *8 (citing *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004)). The Court **FURTHER ORDERS** the Clerk to administratively close this case. A case that is administratively closed "may be reopened upon request of the parties or on the court's own motion." *Mire*, 389 F.3d at 167.

It is **ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

**SIGNED** on December 20, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE